758 A.2d 611

MEADOWS OF GREENSPRING HOMEOWNERS ASSOCIATION, INC., et al.

v.

FOXLEIGH ENTERPRISES, INC.

No. 1203, Sept. Term, 1999.

Court of Special Appeals of Maryland.

Aug. 31, 2000.

Joseph H. Young, Hogan & Hartson, LLP, Baltimore, and Deborah C. Dopkin, Towson, on the brief, for appellant, John Hopkins & Suburban.

K. Donald Proctor and Proctor & Shach, LLC, Towson, on the brief for appellant, Meadows of Greenspring.

Stuart D. Kaplow, Towson, for appellee.

Argued before HOLLANDER, SONNER, and KRAUSER, JJ.

SONNER, Judge.

This case arises out a zoning dispute in which the Board of Appeals of Baltimore County ("Board of Appeals") dismissed the appeal as unripe and which the Circuit Court for Baltimore County affirmed. On appeal, we are presented with a single issue:

Does the Baltimore County Board of Appeals have jurisdiction to hear an appeal of an administrative order and decision made by the Director of the Department of Permits and Development Management exempting the developer

from review under current development regulations and permitting the developer to proceed with its proposal under the former County Review Group process?

For the reasons discussed below, we affirm the judgment of the lower court.

Foxleigh Enterprises, Inc. ("Foxleigh"), appellee, is the owner and developer of property located at Greenspring Station in Baltimore County. On April 15, 1998, Foxleigh filed a request with the Baltimore County Development Review Committee ("DRC"), pursuant to the Baltimore County Code (B.C.C.) § 26–169, "seeking the concurrence of the DRC that the [proposed] plan constitutes a refinement to a previously approved CRG [County Review Group] plan." Foxleigh proposed to develop an eight-story, 160,000 square foot building, which would include offices, retail space, and a five-story parking structure. Foxleigh's previous plan was approved by the County Review Group ("CRG") on April 28, 1983. Appellants, Mullan Greenspring Limited Partnership; Mullan Pavilions Limited Partnership; Johns Hopkins Suburban Health Center, LP; Valleys Planning Council, Inc.; The Meadows of Greenspring Homeowners Association, Inc.; and Norman Wilder, own property adjacent to or in the immediate vicinity of, or have an interest in, the property at issue. Appellants objected to the development and contended that it is not a "refinement" of the previous plan and, consequently, should be processed under the current development regulations by DRC review, not CRG review. Appellants contended that, under the previous CRG regulations, B.C.C. §§ 22–37, *et seq.* (1978), appellants' involvement and ability to be heard in the development process is significantly curtailed. However, in 1990, Baltimore County rewrote its development regulations and replaced the CRG development review process with the current DRC review process. Appellants argue that under the new DRC regulations, B.C.C. §§ 26–166, *et seq.*, a public hearing is required and appellants are afforded mandatory notice, disclosures, and an opportunity for input at every critical stage of the development review process.

The DRC held an open meeting on April 27, 1998, in which appellants participated. On May 12, 1998, Arnold Jablon, the Director of the Baltimore County Department of Permits and Development Management, responded to Foxleigh's request by a letter, which stated:

*Pursuant to Article 25A, Section 5(U) of the Annotated Code of Maryland, and as provided in Section 602(d) of the Baltimore County Charter, and Section 26–132 of the Baltimore County Code, this letter constitutes an administrative order and decision* on the request for issuance, renewal, or modification of a license, permit, approval, exemption, waiver or other form of permission you filed with this department. . . .

The DRC has, in fact, met in an open meeting on April 27, 1998, and determined that your project is a material change to the CRG. Please submit new plans, so a new CRG can be scheduled.

(Emphasis added). Foxleigh contends that appellants prevailed in that the building was not a refinement but, rather, a material change. Appellants contend, however, that although Jablon's letter determined that the proposed development was a material change, in effect it granted Foxleigh an exemption by determining that the CRG process applied, as opposed to the more thorough DRC review process.

Three separate appeals were filed on June 9, 10, and 11, 1998, by Mullan Greenspring Limited Partnership, *et al.*; Johns Hopkins Suburban Health Center, LP; and Valleys Planning Council, Inc., to the Board of Appeals.[1] Foxleigh filed a Motion to Dismiss, arguing that Jablon's letter was not

---

1. On June 9, 1998, Mullan Greenspring Limited Partnership and Mullan Pavilions Limited Partnership filed an appeal. On June 10, 1998, the Johns Hopkins Suburban Health Center filed an appeal. On June 11, 1998, The Valleys Planning Council, Inc. filed an appeal on behalf of the following organizations: Hillside at Seminary HOA, Seminary Ridge HOA, Huntspring HOA, Chestnut Ridge Community Association 8507, Heatherfield HOA, Noris Lankford, Boxwood HOA, Seminary Springs HOA, Meadows HOA, Falls Road Community Association, and Greenspring Valley Association.

a final administrative action from which an appeal may be taken and, therefore, the Board of Appeals lacked subject matter jurisdiction. In its Opinion entered on September 16, 1998, the Board of Appeals cited *United Parcel v. People's Counsel,* 336 Md. 569, 650 A.2d 226 (1994), and found as follows:

... the May 12, 1998 letter describes a CRG plan as opposed to a DRC plan. As a result, it is not governed by the DRC but the CRG per Sections 26–169 and 26–211 of the [Maryland Annotated] Code. As such, Mr. Jablon's role differs from that which he arguably may exercise under the DRC. The CRG process provides for an appeal at the time the plan is approved, not at the juncture at which Developer [Foxleigh] is advised to submit a plan. That time had not yet occurred at the time of the instant appeal. The instant appeal thus is not ripe and does not constitute a final act from which an appeal lies.

Appellants filed Petitions for Judicial Review in the Circuit Court for Baltimore County. The circuit court consolidated the Petitions and a hearing was held on May 25, 1999. The court's Opinion and Order, filed on June 15, 1999, affirmed the Board of Appeals's decision and held that Jablon's letter was not a final action appealable to the Board of Appeals under relevant statute. This appeal followed.

 Judicial review of an administrative agency's action is narrow. *United Parcel,* 336 Md. at 576, 650 A.2d 226. The circuit court's standard of review is limited to whether or not it is "in accordance with law." MD.CODE (1999 Supp.), art. 25A, § 5(U). A reviewing court is confined to determining if there is substantial evidence in the record to support the agency's findings and conclusions, and to determine whether the agency's decision is premised on an erroneous conclusion of law. *United Parcel,* 336 Md. at 577, 650 A.2d 226. As such, a reviewing court is limited to the findings of fact and conclusions of law actually made by the agency. *Id.* at 585, 650 A.2d 226. An appellate court must essentially repeat the circuit court's review of an agency's decision. *Art Wood v.*

*Wiseburg,* 88 Md.App. 723, 728, 596 A.2d 712 (1991), *cert. denied,* 325 Md. 397, 601 A.2d 130 (1992).

█ We find that there is substantial evidence in the record to support the Board of Appeals's findings of fact and conclusions of law. The Board of Appeals's decision relied on *United Parcel v. People's Counsel,* 336 Md. 569, 650 A.2d 226 (1994), and B.C.C. §§ 26–169 and 26–211. B.C.C. § 26–169 states:

> These regulations shall apply to all development except . . . such development as has received a CRG approval, reclamation plan approval, any other project vested by law or such development for which a CRG plan has been accepted for filing by the department of public works prior to the date of adoption of Bill 1–92, all of which development *shall be governed by the subdivision regulations in effect at the time of said approval or acceptance for filing,* as the case may be.

(Emphasis added). B.C.C. § 26–211 states, "Any material amendment to an approved plan shall be reviewed and approved in the same manner as the original plan. . . ."

It is undisputed that Foxleigh had an approved plan by the CRG on April 28, 1983. Sections 26–169 and 26–211 unambiguously state that there is no discretion involved in deciding which review process is applicable. A previously approved plan by the CRG must be reviewed by the CRG process for any material amendments. Therefore, these statutes are the bases for Jablon's letter and for the Board of Appeals's dismissal of appellants' appeal.

In *United Parcel,* the Court of Appeals held that a letter from the Zoning Commissioner, written in response to a citizen complaint dated more than two months after a building permit was issued to UPS, was not an appealable decision. *United Parcel,* 336 Md. at 581–85, 650 A.2d 226. Evaluating Maryland Annotated Code, Article 25A, § 5(U), upon which appellants in this case rely, the Court of Appeals found as follows:

The "approval" or "other form of permission" in this case, and the "decision" of the Baltimore County officials, occurred in 1986 when the Zoning Commissioner and other officials approved UPS's application for a building permit and the Building Engineer issued a building permit.... [Article 25A, § 5(U)'s] words "issuance, renewal, denial, revocation, suspension, annulment, or modification" obviously refer to an operative event which determines whether the applicant will have a license or permit, and the conditions or scope of that license or permit.... [The] appealable event occurred in 1986 when the application for [the] permit was approved and ... issued.

*Id.* at 583–84, 650 A.2d 226.

We find this case sufficiently analogous to *United Parcel.* Jablon's letter was not an "operative event" that determined that Foxleigh's proposed plan will be granted a license or permit, and did not determine the conditions or scope of that license or permit. Rather, Jablon's letter merely informed Foxleigh that the proposed plan must be reviewed by the CRG.

We also find *Art Wood v. Wiseburg,* 88 Md.App. 723, 596 A.2d 712 (1991), *cert. denied,* 325 Md. 397, 601 A.2d 130 (1992), instructive. In *Art Wood,* the CRG made comments on a proposed plan, which essentially directed the developer to amend details of the proposed plan in specific ways. *Art Wood,* 88 Md.App. at 733, 596 A.2d 712. This Court held that the CRG's action was an appealable final action because the CRG "was not waiting for or seeking any 'additional information' before approving the plan." *Id.* at 733, 596 A.2d 712. Instead, "[a]ll that remained for the CRG to do ... was to review the amended Plan to make certain that [the developer] had indeed complied with the agencies' and the CRG's directives." *Id.* at 733–34, 596 A.2d 712. In contrast to *Art Wood,* in this case, the CRG needs additional information to begin the approval process. Accordingly, there is not yet a final action that can be appealed.

Appellants rely on Maryland Annotated Code, Article 25A, § 5(U), Baltimore County Charter § 602(d), and B.C.C. § 26–132 for their argument that Jablon's letter is appealable.[2] Maryland Annotated Code, Article 25A, § 5, describes the express powers granted and conferred upon chartered counties in Maryland. MD.CODE (1999 Supp.), art. 25A, § 5. Subsection (U) governs County Boards of Appeal and states, in pertinent part:

> To enact local laws providing (1) for the establishment of a county board of appeals whose members shall be appointed by the county council; ... and (4) for the decision by the board on petition by any interested person and after notice and opportunity for hearing ... of such of the following matters arising (either originally or on review of the action of an administrative officer or agency) under any law, ordinance, or regulation of, or subject to amendment or repeal by, the county council, as shall be specified from time to time by such local laws enacted under this subsection: *An application for a zoning variation or exception or amendment of a zoning ordinance map; the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval, exemption, waiver, certificate, registration, or other form of permission or of any adjudicatory order.* ...

(Emphasis added). Pursuant to this grant of authority, § 601 of the Baltimore County Charter created a county board of appeals, and § 602 established procedures for administering

---

2. Appellants also rely on Minutes of Deliberation from December 9, 1999, in *In the Matter of Beth Tfiloh,* Case No. CBA–99–129, in which the Board of Appeals indicated that a letter written by Jablon accepting the DRC's recommendation and subsequently granting the developer a limited exemption is appealable, as well as two decisions by the Circuit Court for Baltimore County: *Kucera v. UMBC Research Park Corp., Inc.,* Case No. 03–C–97–004580, decided on November 16, 1999, and *Petition of Alan S. Kanter and Associates and K & S Associates,* Case No. 03–C–95–010094, decided on October 30, 1996. We decline to consider these sources as they are not binding on this Court. *Dept. of Health v. Dillman,* 116 Md.App. 27, 41–42, 695 A.2d 211 (1997).

the functions of the Board of Appeals. Section 602 states, in pertinent part:

> The county board of appeals shall have and may exercise the following functions and powers:

> \* \* \*

> (d) *Appeals from executive, administrative and adjudicatory orders.* The county board of appeals shall hear and decide appeals from all other administrative and adjudicatory orders as may from time to time be provided by Article 25A of the Annotated Code of Maryland (1957 Edition), as amended, or by legislative act of the county council not inconsistent therewith.

B.C.C. § 26–132 states, in pertinent part:

> (a) Any person ... aggrieved or feeling aggrieved by any decision or order of the zoning commissioner or the director of zoning administration and development management shall have the right to appeal therefrom to the county board of appeals.... Notice of such appeals shall be filed, in writing, with the director within thirty (30) days from the date of any final order appealed....

Appellants' argument fails to recognize that Jablon's letter does not make any decision and is not an order. It does not issue or modify any license, permit, or approval. Jablon's letter only informs Foxleigh that the proposed plan is a material change from the previously approved plan and that, in order to be approved, new plans must be submitted for consideration. At the time of Jablon's letter and at the time this appeal was filed with the Board of Appeals, Foxleigh could have decided not to submit new plans. Or, if it submitted new plans, the CRG could have approved or disapproved them. Therefore, as the Board of Appeals concluded, the appeal was not ripe.

Furthermore, that Jablon's letter stated that it was an administrative order and decision does not automatically make it an appealable decision. As this Court stated in *Art Wood:*

Whether the CRG's action was authorized by the B.C.C. must be determined by the content or effect of that action rather than by the name or description given it by the CRG.... [The] question [of] whether a judgment, order, or decree is final and appealable is not determined by the name or description which the court below gives it, but is to be decided by the appellate court on a consideration of the essence of what is done thereby.

88 Md.App. at 732–33, 596 A.2d 712 (citations omitted).

We note that appellants have not been left without remedy. In response to Jablon's May 12, 1988 letter, Foxleigh submitted a plan for CRG review. Appellants participated in a subsequent CRG public meeting. On August 13, 1998, the CRG approved Foxleigh's plan. Appellants are appealing the CRG's approval in a separate appeal.

**JUDGMENT AFFIRMED.**

**APPELLANTS TO PAY COSTS.**